C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
GARY M. GLESSING,                                           :
:   **MEMORANDUM DECISION &**
                            Plaintiff,                      :   **ORDER**
:
            - against -                                     :   16 Civ. 2010  (BMC)
:
COMMISSIONER OF SOCIAL SECURITY,                            :
:
                            Defendant.                      :
------------------------------------------------------------ X

**COGAN,** District Judge.

Plaintiff *pro se* filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of Social Security (the "Commissioner") finding, for the second time, that he is not disabled, and thus not entitled to disability benefits.  Plaintiff, a retired New York City Police Officer, originally filed for social security benefits in 2011, alleging disability due to reconstructive surgeries of the anterior cruciate ligament (ACL) in his left knee.  In 2012, an Administrative Law Judge ("ALJ") denied plaintiff's application for benefits, finding that plaintiff had a severe impairment to his left knee, but that this impairment did not render him disabled because he retained the residual functioning capacity to perform light work.  I remanded the case for further proceedings on the ground, *inter alia*, that the ALJ's determination that plaintiff retained the residual functional capacity to perform light work was not supported by the record.  See Glessing v. Comm'r of Soc. Sec., No. 13 Civ. 1254, 2014 WL 1599944 (E.D.N.Y. April 17, 2014).  Familiarity with the facts as set forth in that decision is assumed.

1

On remand, a different ALJ received further evidence and again found that plaintiff was not disabled during the relevant period. Plaintiff seeks review of that determination, and the action is before me on the Commissioner's motion for judgment on the pleadings.

**BACKGROUND**

On remand, the ALJ received additional testimony from plaintiff and a different vocational expert than the one who had previously testified. The ALJ found that plaintiff had to establish disability on or before March 31, 2012. Plaintiff testified that he had a driver's license in 2011 and 2012, and during that time, he was able to drive short distances as often as was needed. Plaintiff stated that he had attended church and meetings of retirement organizations during this time. Plaintiff further testified that after he underwent an arthroscopy on his left knee in 1995, the New York City Police Department placed him on restrictive duty. As a desk officer on restrictive duty, plaintiff was not required to work in the field or be on patrol. Plaintiff stated that he did not need to do any lifting while working as a desk officer and agreed with the ALJ that he "basically sat most of the day and answered phones."

Plaintiff testified that after retiring from the police force in 1998, he worked the night shift as a guard for a museum. Initially, plaintiff was able to sit in a cushioned armchair with his leg elevated while performing his duties, which he had no difficulty doing. However, when the museum changed the responsibilities of night guards, requiring guards to patrol the museum and walk up stairs, plaintiff could no longer perform his duties.

The vocational expert testified, in response to a series of hypotheticals posed by the ALJ, that an individual of plaintiff's age, education, and work experience, who is able to lift up to 10 lbs. frequently, stand and walk for two hours per day, sit for six hours per day, occasionally climb stairs, but never crouch, kneel, or crawl, and who is required to take a two-minute break

every hour to stretch and adjust, could perform the job of a desk officer.  He further testified that an individual with the previous characteristics and limitations, who also needs to extend and elevate his leg 50% of the time, could still perform the job of a desk officer because appropriate accommodations could be made.

After the hearing, the ALJ issued a decision finding that, during the relevant time period, plaintiff had severe impairments consisting of left knee degenerative joint disease and toe disorder of the left foot.  However, the ALJ further found that these impairments did not render plaintiff disabled, not because plaintiff was capable of performing light work, but because he retained the residual functional capacity to perform sedentary work.  The ALJ, crediting the testimony of the vocational expert, further found that plaintiff was capable of performing his past work as a desk officer.

## DISCUSSION

The scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  See Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998).  Judicial review of disability benefit determinations is governed by 42 U.S.C. §§ 421(d) and 1383(c)(3), which incorporate the standards established by 42 U.S.C. § 405(g).  In relevant part, § 405(g) adopts the familiar administrative law review standard of "substantial evidence," i.e., that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  Thus, if the Commissioner's decision is supported by substantial evidence, and there are no other legal or procedural deficiencies, her decision must be affirmed.

The Supreme Court has defined "substantial evidence" to mean "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (internal quotation marks and citation omitted). "In determining whether substantial evidence supports a finding of the Secretary, the court must not look at the supporting evidence in isolation, but must view it in light of the other evidence in the record that might detract from such finding, including any contradictory evidence and evidence from which conflicting inferences may be drawn." Rivera v. Sullivan, 771 F. Supp. 1339, 1351 (S.D.N.Y. 1991).

I have reviewed the record to determine if there is substantial evidence to support the ALJ's determination of non-disability. As in most cases, the record is not entirely one-sided, but there is more than substantial evidence. Although the record is clear that plaintiff's severe impairments prevented him from performing work that required crouching, crawling, climbing, and significant walking and standing, it does support the ALJ's finding that plaintiff was able to sit for significant periods of time, and therefore was capable of performing sedentary work, which, by definition, is primarily performed in a seated position.

The ALJ's determination that plaintiff retained the residual functional capacity to perform sedentary work is consistent with the results of Dr. Mahendra Misra's physical consultative examination of plaintiff; the Cooperative Disability Investigations Unit ("CDI") report; examinations and evaluations of plaintiff by his treating physicians, Dr. Stuart I. Springer; and plaintiff's own statements.

First, in 2011, Dr. Misra, after reviewing plaintiff's medical records and performing a consultative examination, found that although plaintiff had a limping gait, his knee had considerably improved and his range of motion in his upper and lower extremities, including his

left knee, was normal. Dr. Misra opined that plaintiff would not be able to do work that requires prolonged standing, walking, climbing, running, crawling, and lifting. This opinion is entirely consistent with the ALJ's finding that plaintiff was capable of performing work that required only occasional walking and standing.

Second, the CDI report, which notes that in 2011 plaintiff had been observed running across the street to avoid traffic, watering his lawn, and climbing into a van, supports the conclusion that plaintiff was capable of occasionally walking and standing. Unlike the original ALJ, who improperly credited the CDI report as proof that plaintiff could perform light work, see Glessing, 2014 WL 1599944 at *11, the ALJ on remand noted that the CDI report may not accurately portray plaintiff's abilities to walk and stand for substantial amounts of time, but it does show that plaintiff was sufficiently mobile to be able to get to work and to occasionally stand and walk while at work.

Third, the results of Dr. Springer's examinations are consistent with the ALJ's findings. Although plaintiff underwent a second arthroscopy in 2012, prior to surgery Dr. Springer found that plaintiff's knee was stable and had only mild atrophy and decreased muscle tone. Further, Dr. Springer's opinion in 2012 that plaintiff's knee has been gradually deteriorating since his original surgery in 1995, and that his condition in 2011 would have already been significantly progressed, does not undermine the ALJ's finding that plaintiff was capable of performing work primarily in a seated position.

Finally, plaintiff's own statements demonstrate that he was capable of performing sedentary work. At the hearing on remand, plaintiff testified that he drove and attended meetings during the relevant period. He also testified that he had no difficulty working as a desk officer even shortly after his first surgery, and that after retiring three years later, he had been able to

5

work as a security guard.  Similarly, at the original hearing in 2012, plaintiff had testified that he could go to the store, water his lawn, and take out the garbage.  Moreover, he had informed Dr. Misra in 2011 that he "has no problem sitting," and that he can walk two blocks.

The contrary opinion of Dr. Sujit Chakrabarti does not require a different conclusion.  After performing one consultative examination of plaintiff in 2014, Dr. Chakrabarti opined that plaintiff could sit for two hours at a time without interruption, but only for a total of four hours per day, and that plaintiff could walk for thirty minutes at a time without interruption, but only for a total of one hour per day.  I do not find that that the ALJ improperly discounted this opinion.  Dr. Chakrabarti's opinion is not entitled to the deference of a treating physician, and the ALJ sufficiently explained that he only gave partial weight to Dr. Chakrabarti's opinion because it is inconsistent with the results of his own examination of plaintiff, which were generally normal and did not indicate significant weakness or atrophy.  As the ALJ also noted, the results of Chakrabarti's examination are also less probative because the examination was performed two years after the relevant period.

I also find that the ALJ's determination that plaintiff retained the residual functioning capacity to perform his past relevant work as a desk officer is supported by substantial evidence.  The vocational expert found that an individual with plaintiff's impairments could perform the job of a desk officer and that appropriate accommodations could be made.  Moreover, plaintiff admitted that he had no difficulties performing the duties of a desk officer after his first surgery.

## CONCLUSION

The Commissioner's motion for judgment on the pleadings is granted. The Clerk is directed to enter judgment in favor of defendant, dismissing the complaint.

**SO ORDERED**.

                                                Digitally signed by Brian M. Cogan
                                                _____
                                                                  U.S.D.J.

Dated: Brooklyn, New York
       January 1, 2017